OPINION OF THE COURT
Robert C. Williams, J.
In this CPLR article 78 proceeding, petitioner Herbert S. Ellis seeks an order and judgment annulling the decision and order of the respondent (the DEC), dated February 8, 1994, to amend certain freshwater wetlands maps in Albany County to add a new wetland TN-11 that affects a portion of the property owned by the petitioner. The petitioner claims that the decision and order was not processed in accordance with *137 applicable statutes, rules and regulations and is illegal, arbitrary and capricious and affected by errors of law.
This proceeding concerns a dispute over whether the petitioner’s property was properly designated as a wetlands area and whether the respondent gave him proper notice of the proceedings in which the DEC so designated his property. New York’s "Freshwater Wetlands Act” (the Act) is set forth in article 24 of the Environmental Conservation Law and requires a permit from the DEC to develop, alter, dredge or fill in freshwater wetlands (ECL 24-0701 [2]). The purpose of the Act is to conserve New York’s remaining wetland areas which are needed for storm and flood control, habitat propagation, sewage disposal and recreation (Weinberg, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 ½, ECL 24-0101, at 463). It is New York’s public policy to conserve freshwater wetlands and to regulate their use and development consistent with the general welfare and beneficial economic, social and agricultural development of the State (ECL 24-0103). Wetlands are defined as "lands and submerged lands commonly called marshes, swamps, sloughs, bogs and flats” containing certain listed species of vegetation (ECL 24-0107 [1] [a]).
The Act directs the Commissioner of the DEC to conduct a study to inventory freshwater wetlands and place on a map those which exceed 12.4 acres (ECL 24-0301). The wetlands map is then promulgated and filed with the clerk of each local government (ECL 24-0301 [5]). The Commissioner is authorized to periodically update and amend the maps and adjust them for accuracy because of errors, additions, deletions, and because of changes due to natural or permitted activities (ECL 24-0301 [6]). The Act does not prohibit activities or development on wetlands; it does, however, require a permit to develop or conduct certain regulated activities on them (ECL 24-0701 [1]).
The petitioner owns approximately 195 acres in the Town of Colonie, Albany County (the Property), which he acquired in 1975. Part of the Property had been used for agricultural purposes, but in 1989, the petitioner proposed placing a subdivision on the Property. A general environmental impact statement (GEIS) was prepared and did not identify the Property as a wetland.
Apparently, in or about 1990, certain persons who lived near the Property believed that it and other properties nearby were wetlands whose development should be regulated. On *138 September 13, 1990, Karl Parker, a senior wildlife biologist with the DEC, visited the site. He then reviewed aerial photographs and soil maps, and, after a second field visit on September 21, 1990, found that the area, which includes the petitioner’s Property, qualified for addition to State wetland maps. He found that the wetland was associated with the Salt Kill and its tributaries, and is predominantly composed of wet meadow.
Parker found that the Property contains various wetland plants including American elm, cattail, purple loosestrife, graystem dogwood, weeping willow, swamp white oak and red maple. This kind of vegetation can qualify property for wetlands status pursuant to ECL 24-0107 (1), (3) and (6). He also observed signs of beavers, deer, crows, red tail hawks, cottontail rabbits, black duck, mallard duck, red-winged blackbirds and frogs. Parker decided that the DEC should consider amending its wetlands map to include the area. He decided that the area should be designated a Class 2 wetland because it provides a drainage basin with a natural stormwater retention facility, is located in an urbanized area, and is one of the three largest wetlands in the town (6 NYCRR 664.5 [b] [12], [15], [16]). After a hearing and a period for comments from affected landowners, the DEC decided to amend the map. The amendment designated petitioner’s Property as a wetland.
The petitioner contends that the determination must be annulled because (1) the DEC failed to provide him with proper notice of the wetland designation proceedings and determinations; and (2) the DEC failed to consider present site conditions in making its determination and thus its decision is arbitrary, irrational and affected by an error of law.*
A. NOTICE
In considering whether to amend the map of Albany County wetlands, the DEC mailed individual notices to landowners and also published notices in local newspapers and the Environmental Notice Bulletin.
Thereafter, the DEC announced that it would conduct a public hearing on the proposal. The DEC was required to provide notice as follows: "Upon completion of the tentative *139 freshwater wetlands map for a particular area, the commissioner or his designated hearing officer shall hold a public hearing in that area in order to afford an opportunity for any person to propose additions or deletions from such map. The commissioner shall give notice of such hearing to each owner of record as shown on the latest completed tax assessment rolls, of lands designated as such wetlands as shown on said map * * * by certified mail not less than thirty days prior to the date set for such hearing * * * The commissioner shall also cause notice of such hearing to be published at least once, not more than thirty days nor fewer than ten days before the date set for such hearing, in at least two newspapers having general circulation in the area where such wetlands are located.” (ECL 24-0301 [4].)
DEC contends that it sent notice of the hearing by certified mail to the address shown on the latest completed tax assessment roll for the Property. Petitioner claims that he never received the certified notice. The hearing was scheduled to begin at 7:00 p.m. on October 17, 1991. The petitioner’s attorney learned of the hearing from other sources and, on the morning of October 17, telephoned Parker and said that the petitioner had not been notified of the hearing. Parker then immediately faxed to the petitioner’s attorney a copy of the hearing notice and proof of certified mailing of the notice. The same morning Parker received in the mail the hearing notice that he had previously mailed to the petitioner announcing the hearing. This notice was returned by the post office as undeliverable because the petitioner’s forwarding notice on file with the Postal Service had expired. Parker then verified with the Town of Colonie tax assessor that the address on the envelope was the same address provided and maintained by the tax assessor on the latest completed tax assessment rolls. The petitioner actively contested the designation of the Property as wetlands and submitted to the respondent an expert’s report challenging Parker’s conclusions.
The court finds that the DEC complied with ECL 24-0301 (4) by sending notice via certified mail to the petitioner’s address on file with the tax assessor’s office. The DEC obeyed the mandate of the statute and the petitioner, apparently, failed to update or correct the address on file with the tax assessor. Moreover, the petitioner had actual notice of the hearing and actively contested the inclusion of the Property on the wetlands map (see, Matter of Agosto v Tax Commn., 68 NY2d 891, 893 [1986] [even though respondent made a minor *140 error in petitioner’s address, the notice was sufficient where the petitioner received actual notice in sufficient time to contest determination]). Thus, the notice was sufficient.
The petitioner claims that when the DEC made its final determination to include the Property on the wetlands map, it again failed to provide proper notice. The notice required is as follows: "After considering the testimony given at such hearing and any other facts which may be deemed pertinent, after considering the rights of affected property owners and the ecological balance in accordance with the policy and purposes of this article, and, in the case of wetlands * * * the commissioner shall promulgate by order the final freshwater wetlands map. Such order shall not be promulgated less than sixty days from the date of the hearing required by subdivision four hereof. A copy of the order, together with a copy of such map or relevant portion thereof shall be filed in the office of the clerk of each local government in which each such wetland or a portion thereof is located * * * The commissioner shall simultaneously give notice of such order to each owner of lands, as shown on the latest completed tax assessment rolls, designated as such wetlands by mailing a copy of such order to such owner by certified mail in any case where a notice by certified mail was not sent pursuant to subdivision four hereof, and in all other cases by first class mail * * * At the time of filing with such clerk or clerks, the commissioner shall also cause a copy of such order to be published in at least two newspapers having general circulation in the area where such wetlands are located.” (ECL 24-0301 [5].) Thus, if notice of the hearing was not sent by certified mail, notice of the order must be sent by certified mail. In all other cases, notice must be sent by first-class mail.
The DEC sent to the petitioner notice of the order by first-class mail; it decided that this course was appropriate because it had sent notice of the hearing by certified mail. Parker checked again the names on the tax assessment roll and mailed a copy of the order to the address of the petitioner that was set forth on the tax assessment roll. Parker points out that that address was used by the petitioner’s consultant in papers he submitted to the respondent challenging the wetlands designation.
The petitioner contends that he never received the first-class mail. He argues that the respondent should have sent notice to his attorney, and that notice should have been sent *141 by certified mail. The respondent states that the first-class notice he sent to the petitioner was never returned as undeliverable.
The court finds that the notice was proper. The petitioner has a duty to ensure that a proper address is on file with the tax assessor’s office (see, RPTL 502 [9] [" 'tax billing address’ ” means the address designated by the owner to which tax bills shall be sent]; Matter of Girrbach v Levine, 132 AD2d 41, 43 [1987] [with respect to tax sale, county is entitled to rely on record information and taxpayer has duty to keep mailing address current]). The petitioner has failed to show that the address on file in the tax assessor’s office was wrong, or that he notified the assessor of a change of address. It is the petitioner who has the obligation to ensure that his proper address is on file; the respondent need not undertake the burden of ensuring that the addresses listed on the tax assessment rolls are correct (see, Matter of Girrbach v Levine, supra, at 44). The respondent thus had a right to rely on the address set forth on the tax assessment roll in determining where to mail both notices (supra).
The respondent mailed notice of the hearing by certified mail to the address listed on the tax assessment roll. That was sufficient to comply with the requirements of ECL 24-0301 (4). Having mailed notice of the hearing by certified mail, the respondent had a right to send notice of the determination by first-class mail.
Moreover, the petitioner has failed to show that the respondent was required to serve notice on his attorney. CPLR 2103 applies to "civil judicial proceedings in all courts of the state and before all judges, except where the procedure is regulated by inconsistent statute” (CPLR 101). That statute does not apply to an administrative proceeding governed by the specific notice provisions of ECL 24-0301.
The court notes further that the respondent has presented the testimony of the employee, Karl Parker, who mailed the notice of the order. Letters properly addressed, stamped and mailed are presumed received by the addressee even though the addressee denies receipt of the same (Matter of Allstate Ins. Co. v Patrylo, 144 AD2d 243, 246 [1988]). The petitioner’s mere denial of receipt is insufficient to overcome the presumption that the notice was mailed (supra). The court finds that the respondent complied with his statutory obligations and, thus, that notice was proper.
*142 B. was respondent’s decision arbitrary, IRRATIONAL OR IN ERROR OF LAW?
The petitioner next claims that the respondent’s determination to designate the Property as a wetland was arbitrary, irrational and in error of law. An agency’s determination may be overturned as irrational or arbitrary only if it "is without sound basis in reason and is generally taken without regard to the facts.” (Matter of Pell v Board of Educ., 34 NY2d 222, 231 [1974].) It is well "settled that in a proceeding seeking judicial review of administrative action, the court may not substitute its judgment for that of the agency responsible for making the determination, but must ascertain only whether there is a rational basis for the decision or whether it is arbitrary or capricious” (Flacke v Onondaga Landfill Sys., 69 NY2d 355, 363 [1987]).
The Property exceeds the 12.4-acre threshold for inclusion on the wetlands map. It includes reed canary grass, purple loosestrife, cattails, dogwood, soft rush, sedges, ash, swamp white oak, and American elm, all of which are listed in ECL 24-0107 (1) as indicative of wetland status. The record reveals that Parker visited the site on September 21, 1990, November 1, 1990, November 8, 1990 and December 4, 1991. He is an experienced and trained wildlife biologist who examined the terrain for the vegetation and wildlife normally present on wetlands. In designating the Property as a wetland, Parker excluded areas engaged in active agriculture and containing agricultural row crops. Although the petitioner’s expert disagrees with the conclusions reached by Parker, those conclusions were supported by evidence and were based on the criteria set forth in the ECL.
The petitioner claims that the Property’s wetland status was caused by artificial conditions and that it has since reverted back to its original nonwetland state. The respondent claims that the reversion, if any, is due to the petitioner’s draining and dredging activity and that such activities should not affect the Property’s wetland status.
The relevant DEC regulation states, in relevant part, as follows: "Once the announcement of a proposed amendment has been made, no activity subject to regulation pursuant to the act shall be initiated within the area that is the subject of the proposal until the commissioner has either amended the map or denied the amendment. However, no activity which has already been initiated at the time of the announcement, *143 within an area that is proposed as an addition to the map, will be subject to such regulation.” (6 NYCRR 664.7 [a] [2] [i].) The DEC argues that activities conducted during the mapping proceeding cannot change the Property’s wetland status under the present circumstances and thus there was no need to revisit the site, as suggested by the petitioner. The respondent explains: "While ECL § 24-0701 (4) provides for an exemption from the statute’s permit requirements when the land is used for agricultural activities, and thus allows one to drain lands for the limited purpose of engaging in the agricultural activities included within the exemption, it does not provide that land drained during the pendency of a map amendment proceeding, for whatever reason, is to be excluded from the map adopted by the Commissioner at the conclusion of the map amendment proceeding. Instead, logic and the public policy reflected in the statute dictate that the lands identified at the commencement of the map amendment proceeding remain on the map adopted by the Commissioner. Were it otherwise, developers across the State would be free to use the agricultural exemption as a vehicle for converting wetlands to non-wetlands, remove the property from the wetlands map, and thus later escape from the statute’s permit requirements for non-exempt activities. This is clearly inconsistent with the language of the statute and the broad construction given to the statute by the courts when construing [it]” (respondent’s answering mem of law, at 22-23). The court agrees with the foregoing analysis (see, Matter of D.B.S. Realty v New York State Dept. of Envtl. Conservation, 201 AD2d 168, 172 [1994] [ECL should be construed in a manner consistent with the general legislative scheme for protection of freshwater wetlands]).
The petitioner has failed to show that the respondent’s determination was arbitrary, irrational or affected by an error of law. The relief sought in the petition is denied.

 The petitioner also suggests that the designation constituted a taking of the Property. The court finds that the taking issue is not yet ripe because the petitioner has not applied for a permit to conduct activity on the Property (see, ECL 24-0705 [7]).